IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 21-cv-00635-RM-STV

FRIDA KAHLO CORPORATION, a Panamanian corporation, and
KIDROBOT, LLC, a Delaware limited liability corporation,

    Plaintiffs,

v.

ARTISTS RIGHTS SOCIETY, INC., a New York corporation

    Defendant.

_____

## ORDER
_____

This matter is before the Court on Defendant Artists Rights Sociecty, Inc.'s ("ARS") Motion to Dismiss the First Amended Complaint. (ECF No. 23.) Plaintiffs Frida Kahlo Corporation ("FKC") and Kidrobot, LLC ("Kidrobot" and together with FKC, "Plaintiffs") filed a Response (ECF No. 24) and ARS filed a Reply (ECF No. 25). ARS also filed a Notice of Supplemental Authority. (ECF No. 27.) The matter is ripe for resolution.

**I.    LEGAL STANDARDS**

    **A.  Motions to Dismiss**

A motion to dismiss under Rule 12(b)(1) tests whether the court has subject matter jurisdiction to properly hear the case before it. The party invoking the court's jurisdiction bears the burden to establish that federal jurisdiction exists, and "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions generally take two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The first form is a facial attack that challenges the sufficiency of the complaint's allegations as to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). The court accepts the allegations in the complaint as true when reviewing a facial attack. *Id.*

The second form is a factual attack that goes beyond the allegations in the complaint and challenges the facts on which subject matter jurisdiction is based. *Id.* at 1003. Unlike a facial attack, the court does not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack. *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citation omitted). And "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion[,]" unless the jurisdictional issue is intertwined with the merits of a plaintiff's case. *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

**B. Jurisdiction and Standing**

"The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc'y. v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). To have Article III – constitutional – standing, "the plaintiff must show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress." *Newdow*, 542 U.S. at 12. In

other words, a plaintiff must plausibly allege 1) injury in fact, 2) fairly traceable to defendant's conduct, 3) that is redressable by a favorable judicial decision. *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1146 (10th Cir. 2017). Article III standing is jurisdictional; it is properly raised under Rule 12(b)(1). *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018); *see Kerr v. Polis*, 930 F.3d 1190, 1194 (10th Cir. 2019) (recognizing dismissal under Rule 12(b)(1) is based on lack of subject matter jurisdiction).

The Declaratory Judgment Act, which is also implicated in this case, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937). Thus, the Supreme Court requires "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240-41, alterations original).

## II.     BACKGROUND

The facts in this matter are largely, and in pertinent part, undisputed at this point. Plaintiff FKC is a Panamanian corporation that purports to hold "numerous worldwide trademarks in connection with the Mexican painter Frida Kahlo." (ECF No. 14, p.1.) Plaintiff Kidrobot is a maker of limited-edition art toys that is operated out of Broomfield, Colorado. (Id.) In 2020, FKC licensed Kidrobot the right to create for sale certain Frida Kahlo-branded toys using a famous painting, *Las Dos Fridas* (or "The Two Fridas.") (Id.)

Defendant ARS, a New York corporation headquartered in New York, is the United

States representative for the intellectual property rights held by the Diego Rivera and Frida Kahlo Museums Trust ("the Trust.") (ECF No. 23, p.3.) The Trust itself is based in Mexico and it is managed and maintained by the Banco de México. (Id.)

In 2021, ARS wrote an email to Kidrobot, informing them of ARS's "authority to license and protect works of art by Frida Kahlo." (ECF No. 23-1, p.20.) In the email, ARS noted that it had come to their attention "that Kidrobot has used a work of art by Frida Kahlo without authorization," and asked that Kidrobot "promptly contact" ARS "to confirm the production run and scope of marketing" of the toy "to facilitate the amicable resolution of this matter." (Id.)

Kidrobot did not respond directly to ARS's email and instead an attorney for FKC responded. (Id., p.19.) In that email, FKC stated that before it could provide information about the toy's production run and marketing, it would "need to verify [ARS's] legitimate interest in serving this letter." (Id.) Therefore, FKC asked that ARS "provide the chain of title of the claimed work (including the rights of 'Banco de México Diego Rivera & Frida Kahlo Museums Trust')". In response, ARS sent a letter from the Banco de México, purporting to confirm that the Trust is the owner of all intellectual property rights in and to *Las Dos Fridas* and that ARS was authorized to protect those rights. (Id., p.16.)

FKC remained unsatisfied by the letter, informing ARS that "you will not be surprised" if it asked for "more than just a letter making such a claim." (Id., p.18.) FKC also stated that "*Las Dos Fridas* was sold long before the Trust was reportedly created and therefore it seems unlikely that the Trust has any rights to *Las Dos Fridas*—assuming that anyone does." (Id.) ARS wrote back, suggesting the request for documentation was a delay tactic and stating that, should it be required to provide additional documentation, "then such will be submitted to a competent court of law." (Id.) FKC responded by informing ARS that it had "filed suit to discover the veracity

4

of ARS's assertions, namely that production of the [toy at issue] is unauthorized and requires permission." (Id.)

FKC filed its suit in the District of Colorado, seeking a declaratory judgment against ARS. (ECF No.1.) Following a Motion to Dismiss by ARS (ECF No. 11), FKC filed a First Amended Complaint (ECF No. 14), which named Kidrobot as an additional plaintiff. ARS then filed a second Motion to Dismiss, which is the Motion at issue here. (ECF No. 23.)

### III. ANALYSIS

The Court has reviewed each of the Parties' arguments regarding jurisdiction and concludes that it need not address all of those questions raised. The Court concludes that there is no "actual controversy" at this point that would give the Court jurisdiction. The Court, therefore, is constrained to dismiss this case.

ARS argues that that Plaintiffs have not demonstrated the existence of an "actual controversy" between the parties, or any evidence that they will suffer an injury in fact, absent the declaration they seek, and that they have therefore failed to meet their burden to demonstrate this Court's jurisdiction in this matter. (ECF No. 23, p.8.) ARS notes that, in its communications with both FKC and Kidrobot, it never made a financial demand nor a threat of a lawsuit. (Id. p.9.) It argues, therefore, that there is no identified, past or imminent injury in fact that a declaration from this Court could remedy. (Id.)

Plaintiffs respond that they are asking this Court to find *Las Dos Fridas* has entered the public domain and that, therefore, Plaintiffs do not need to obtain authorization from ARS, Banco de México, or the Trust in order to make products containing the image of *Las Dos Fridas*. (ECF No. 24, p.7.) They argue that the dispute over whether such authorization is required is a substantial controversy between the parties. (Id.) Plaintiffs also argue that, when

5

ARS emailed Kidrobot and stated that they were using the images "without authorization," and demanded "the production run and scope of marketing" of the toy, as well as when it stated that it was reserving its rights and remedies, it was making a demand of Plaintiffs.  (Id., pp.7-8.) They further contend that, when ARS stated that "[s]hould [it] be required to provide additional documents then such will be submitted to a competent court of law," and again emphasized that it was reserving its rights, ARS was implicitly threatening litigation.  (Id. p.8.)  Plaintiffs state that "[n]o more is required to show that an actual controversy exists."  (Id. p.9.)

As an initial matter, the Court notes that although Plaintiffs attempt to distinguish two of the cases cited by ARS in support of its argument, they provide no supporting authority of their own to substantiate their argument that they have demonstrated the existence of an actual controversy in this case.  (Id. pp.7-9.)  In any event, Plaintiffs' efforts to distinguish those cases rests on the proposition that the disputes in those cases, *PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.*, No. 04-CIV-8369-LMM, 2006 WL 785283 (S.D.N.Y., Mar. 23, 2006) and *Scottsdale Indemnity Co. v. Convercent, Inc.* No. 17-cv-01236-RBJ, 2017 WL 5446093 (D. Colo. Nov. 14, 2017), were even *more* speculative than that at issue in this case.  (ECF No. 24, p.8.)  Be that as it may, that fails to assist Plaintiffs in meeting their burden, as the parties invoking this Court's jurisdiction, to demonstrate that such jurisdiction exists.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that "The party invoking federal jurisdiction bears the burden of establishing the elements of standing to invoke the powers of the federal courts).

The Court is mindful that "an injury in fact must be actual or imminent, not conjectural or hypothetical."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005.)  "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute injury in fact."  *Whitmore v. Arkansas*, 495 U.S. 149, 158

6

(1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). While a party need not wait for the threatened injury to occur, such an injury must be assuredly on the horizon. *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1282 (10th Cir. 2002) (quoting *Babbitt*, 442 U.S. at 298).

In this case, Plaintiffs have not demonstrated that ARS intends, imminently or otherwise, to file suit against them. In fact, despite Plaintiffs' filing of this suit, ARS has not attempted to countersue and has merely moved to dismiss. To interpret the emails between the Parties as Plaintiffs would like the Court to do would require it to do exactly what it must not—speculate and hypothesize about the future intentions of one of the Parties. The emails do not demand money, they ask for information. Similarly, although they mention legal remedies and courts, nowhere do they indicate that ARS has a present intention to sue Plaintiffs. Nor do Plaintiffs allege any fact suggesting that they have, in any way, altered their behavior on the basis of this ongoing dispute. *See Essence, Inc.*, 285 F.3f at 1282 (noting a lack of standing where, among other things, the plaintiff did not allege any facts suggesting that it had altered its behavior in response to the disputed issue). They do not allege any past injury of any kind, and they fail to offer more than a conjectural future injury. For these reasons, the Court concludes that Plaintiffs have failed to allege an actual controversy that would put this case within the Court's jurisdiction.

## IV.   CONCLUSION

Because this Court lacks jurisdiction over Plaintiffs' lawsuit, it will not dismiss this case "with prejudice," which is a dismissal on the merits. *Olsen v. Aebersold*, 71 F. App'x 7, 10 (10th Cir. 2003). Therefore, the case must be dismissed "without prejudice" for lack of subject-matter jurisdiction. *Id.*

Based on the foregoing, the Court ORDERS:

(1) That Defendant's motion to dismiss (ECF No. 23) is GRANTED;

(2) That Plaintiff's Amended Complaint (ECF No. 14) is DISMISSED WITHOUT PREJUDICE; and

(3) That the Clerk shall close this case.

DATED this 7th day of September, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge